FILED
CLERK, U.S. DISTRICT COURT
1/24/2024
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ TV _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2023 Grand Jury

| UNITED STATES OF AMERICA, | ED CR No. 5:24-cr-00026-ODW |
|---|---|
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c): Criminal Forfeiture] |
| TERRY WILSON, | |
| Defendant. | |

The Grand Jury charges:

COUNTS ONE THROUGH THREE

[18 U.S.C. § 1343]

A.   INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

1.   The Railroad Unemployment Insurance Act ("RUIA"), as amended (45 U.S.C. § 351 et. seq.), provided benefits for unemployed railroad workers and was administered by the Railroad Retirement Board ("RRB").  This program was financed by taxes paid by railroad employers.

2.   Persons applying for unemployment benefits under RUIA ("UI benefits") were required to submit an application for the benefits to

the RRB.  An unemployment benefits claimant was required to answer various questions on his/her application to establish his/her eligibility for the benefits.  Among other things, the claimant was required to provide personal identifying information ("PII") (including the applicant's name, date of birth, and social security number), and certify to RBB that they would immediately report any changes which might affect their entitlement to benefits, and that they reviewed the requirements of eligibility for UI benefits.  As such, claimants had a duty to disclose such changes to RRB.

3.   To be eligible to receive UI benefits, the claimant must, among other things: (1) be unemployed and receive no wages, salary, vacation pay, or any other remuneration from any employer for the days benefits were claimed; (2) be able to work (not sick or injured); and (3) be ready and willing to work.

4.   In addition to submitting an application for UI benefits, a claimant under RUIA was required to submit periodic claims for unemployment benefits, where the claimant was required to affirm the specific days of claimed unemployment for the prior two weeks.  Each claim form contained a certification that the claimant affirmed, including: (1) the claimant had not worked on any day they claimed to be unemployed; and (2) the claimant was ready and willing to work on all days claimed.  The certification also required the claimant to state that the information he or she submitted on the claim form was true, correct, and complete.

5.   On June 19, 2019, defendant TERRY WILSON signed an UI benefit application with RRB, which he submitted to RRB.  A few days later, on June 21, 2019, he signed a Certification and Authorization form which he provided to the RRB, which stated that he understood

that to receive UI benefits, he had to be "UNEMPLOYED, ABLE TO WORK, and READY AND WILLING TO WORK on all days" for which he claimed benefits.

6. On March 13, 2020, the President of the United States declared the ongoing COVID-19 pandemic to be an emergency under Section 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act.

7. On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") was signed into law. The CARES Act created the Pandemic Unemployment Assistance program, which provided unemployment benefits to individuals not eligible for regular unemployment compensation or extended benefits, as well as supplemented other existing unemployment benefits programs, including those that benefited railroad workers.

8. For unemployed railroad workers qualified to receive UI benefits under RUIA, the CARES Act authorized additional payments and the payment of extended benefits to railroad workers who received unemployment benefits between July 1, 2019 and June 30, 2020. The RRB started paying extended unemployment benefits on May 11, 2020, beginning with retroactive payments to individuals who had previously exhausted their regular unemployment benefits, before moving on to new claims.

9. UI benefits under the RUIA were paid out by the RRB via a Department of the Treasury bank account located in Kansas City, Missouri.

10. Defendant WILSON maintained a bank account at Wells Fargo Bank, ending in 7857, that was located in Riverside, California.

B.   THE SCHEME TO DEFRAUD

11.   Beginning on a date unknown to the Grand Jury, but not later than on or about December 3, 2019, and continuing through at least to August 31, 2020, in Riverside County, within the Central District of California, and elsewhere, defendant WILSON, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud the RRB, and to obtain money and property from the RRB by means of materially false and fraudulent pretenses, representations, promises, and the concealment of material facts.

12.   The scheme to defraud, operated, in substance, as follows:

   a.   Beginning no later than December 17, 2019 and continuing through at least September 10, 2020, defendant WILSON repeatedly submitted claims to RRB for UI benefits in which he falsely claimed that he was unemployed and collected no income or wages during the claimed benefit period.

   b.   Despite having a duty to disclose, defendant WILSON concealed from the RRB that he was not actually unemployed during the relevant period, in order to fraudulently collect UI benefits.  In fact, as defendant WILSON then knew, he was employed beginning no later than December 17, 2019, and continuing until at least August 24, 2020.

13.   As a result of the fraudulent scheme, defendant WILSON submitted 18 false claims for UI benefits, resulting in the payment of $25,524.93 in UI benefits, which includes $12,000 in CARES Act benefits that defendant WILSON was not entitled to.

//

C. <u>THE USE OF THE WIRES</u>

14. On or about the following dates, in Riverside County, within the Central District of California, defendant WILSON, for the purpose of executing the above-described scheme to defraud, caused the transmission of the following items by means of wire communication in interstate commerce from the Kansas City Financial Center of the Department of Treasury, located in the State of Missouri, to a Wells Fargo Bank located in Riverside, California, where defendant WILSON maintained a checking account ending in 7857:

| Count | Date | Item |
|---|---|---|
| ONE | 01/17/2020 | An electronic wire transfer of $733.98 from Kansas City, Missouri, to defendant WILSON's Wells Fargo Bank account in Riverside, California |
| TWO | 06/05/2020 | An electronic wire transfer of $3,600 from Kansas City, Missouri, to defendant WILSON's Wells Fargo Bank account in Riverside, California |
| THREE | 09/10/2020 | An electronic wire transfer of $752.80 from Kansas City, Missouri, to defendant WILSON's Wells Fargo Bank account in Riverside, California |

FORFEITURE ALLEGATION

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1.   Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offenses set forth in any of Counts One through Three of this Indictment.

2.   The defendant, if so convicted, shall forfeit to the United States of America the following:

   (a)  All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses; and

   (b)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant, if so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

//

//

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

                                        A TRUE BILL


                                         _____/s/_____
                                         Foreperson


E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

SCOTT M. GARRINGER
Assistant United States Attorney
Deputy Chief, Criminal Section

IAN V. YANNIELLO
Assistant United States Attorney
Chief, General Crimes Section

HAOXIAOHAN CAI
Assistant United States Attorney
General Crimes Section